UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:08-CR-90 |
| | ) | |
| DEXTER L. MORRIS, JR. | ) | |

**MEMORANDUM OPINION AND ORDER**

Two matters are pending before the Court for resolution: (1) Defendant's "Appeal Of The [Magistrate Judge's] Denial of Defense Request for an Independent Psychological Evaluation of JL," [Doc. 34] and (2) Defendant's "Motion To Exclude Testimony Of Dr. Catherine Zook-Bell." [Doc. 66]. The United States has responded, [Docs. 40 and 67], and the Court heard oral argument on January 14, 2009. Since the two matters are related, this order will address both.

**I.     Background**

Defendant Morris is charged in a three count indictment with depriving persons of their civil rights under color of law in violation of 18 U.S.C. § 242 and making a false statement in violation of 18 U.S.C. § 1001. In the two counts alleging violation of 18 U.S.C. § 242, the defendant is accused of acts alleged to have occurred on August 24, 2005, and in September, 2005. Specifically, it is alleged that the defendant, while employed as a deputy sheriff with the Hamblen County Sheriff's Department, stopped a vehicle driven by a woman identified as JL and subsequently forced

1

the woman to engage in sexual activity in the rear seat of his patrol car. The defendant is also charged with causing another woman, NE, to engage in an indecent act at the Hamblen County Detention Center as a condition of not pursuing a criminal charge against NE. The United States has given notice to the defendant that it intends to offer the expert testimony of Dr. Catherine Zook-Bell, a psychologist who has examined and tested one of the vicitms, JL, as to her opinions about JL and about sexual assault victims in general.

## II.     Analysis

Since the defendant's appeal of the Magistrate Judge's order would likely be rendered moot if the Court were to grant the motion to exclude Dr. Zook-Bell's testimony, the Court will deal with that motion first. On December 12, 2008, the government provided the defendant with an expert disclosure dealing with a psychological evaluation by Dr. Catherine Zook-Bell, who has examined and tested one of the alleged victims, JL. According to the government's response to defendant's motion, "Dr. Zook-Bell intends to offer the opinion that "JL" is suffering from psychological impairments consistent with those that would be expected following the experience of a trauma such as sexual assault." The government proposes to elicit testimony from Dr. Zook-Bell "about post-traumatic stress disorder (PTSD) and victimes (sic) of sexual assaults generally and specifically that, based upon her clinical evaluation of J.L. to include objective psychological testing, J.L. is suffering from post-traumatic stress disorder consistent with that to be expected following a trauma such as sexual assault." Dr. Zook-Bell will also testify as to the results of the objective testing as well as JL's subjective complaints. The government agreed at the oral hearing that Dr. Zook-Bell would not be permitted to offer an opinion as to the credibility of JL (such as her reported finding that JL was a "reliable source of information") and would limit testimony about JL's subjective complaints

2

since JL will testify at trial.

The defendant asserts in his motion that the evidence proposed by the government is inadmissible under Rules 401 and 403 of the Federal Rules of Evidence and invades the province of the jury on the ultimate issue to be determined at trial. The defendant also argues that the evidence proposed violates his "Fifth Amendment due process rights to a fair trial and Sixth Amendment right to have an impartial jury trial in this case." The defendant likens the proposed testimony to victim impact testimony which is generally excluded from trial, but admissible at sentencing.

The United States relies heavily on *United States v. Maceo Simmons*, 470 F.3d 1115 (5th Cir. 2006). Simmons, a police officer, was convicted of sexual assault under color of law, involving aggravated sexual abuse. The expert testimony of a licensed psychologist who specialized in sexual violence and sexual victimization was introduced at trial and the district court instructed the jury it could credit or discredit expert testimony as it could any other testimony. Dr. Fitzgerald, the psychologist, testified that the "[victim's] behavior following the incident, as well as her in court testimony, were 'quite consistent'" with that of sexual assault victims. *Id.* at 1123.

The Fifth Circuit rejected Simmons' *Daubert* challenge[1] and held that Dr. Fitzgerald's testimony did not impermissibly intrude upon the jury's determination of the victim's credibility. "Mental health experts are permitted to testify that symptoms and recollections appear [] genuine and that [the expert believes she or] he ha[s] not been duped by a fabricated account." *Id.* at 1124, citing *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (holding that

---

[1] It does not appear that the defendant Morris raises a challenge under *Daubert v. Dow Pharmaceuticals*, 509 U.S. 579 (1993).

3

district court did not abuse its discretion by admitting psychiatrist testimony that plaintiff suffered PTSD and that "he did not think [the plaintiff] had lied to him or fabricated her psychiatric symptoms"). The court noted that Dr. Fitzgerald's testimony did not go as far as the expert's opinion in *Skidmore* where the psychiatrist had testified that plaintiff had undergone a traumatic event and suffered from PTSD. *Id.* at 1124.

The Fifth Circuit holding is consistent with that of other circuits, including the Sixth Circuit. *See, e.g., United States v. Smith*, 142 F.3d 438 (Table), 1998 WL 136564 (6th Cir. 1998) (unpublished).[2] *See* also *Beauchamp v. City of Noblesville*, 320 F.3d 733, 745 (7th Cir. 2003) (expert citing rape research to explain victim's "failure to immediately notify the police that she had been raped" and her "inability to recall the details of the crime clearly" could "be consistent with that of a person who was raped"); *United States v. Alzanki*, 54 F.3d 994, 1006 (1st Cir. 1995), *cert. denied*, 516 U.S. 1111 (1996) (upholding, as reliable under *Daubert*, testimony based on expert's general research and personal interaction with hundreds of abuse victims that alleged victim's "behavioral response to the non-sexual abuse administered by the [defendants] was consistent *with the behavior of abuse victims generally*") (emphasis in original); *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) ("a doctor can also summarize the medical evidence and express an opinion that the evidence is consistent or inconsistent with the victim's allegations of sexual abuse); *Discapolo v. Gorgone*, 399 F.Supp.2d 123 (D.C. Conn. 2005) (testimony of psychologist as to results of

---

[2] In *Smith*, a psychologist and university professor, who had never personally interviewed any of the victims, was permitted to testify regarding rape trauma syndrome. The defendant argued that the testimony violated Federal Rules of Evidence 402 and 403. As in the instant case, the defendant did not challenge the qualifications of the expert but rather that the evidence was not relevant and was more prejudicial than probative. The Sixth Circuit held that the expert's "testimony was directly relevant to the question of why victim did not report the incidents sooner and as such was helpful to the jury." 1988 WL 136564 at *2.

4

psychological testing she administered and her conclusion that victim suffered from PTSD with a sexual abuse trigger, including results of personality assessment inventory which assess "malingering, deception, minimization, and inconsistency").

Although the defendant does not cite a single case as authority for his position, defense counsel did rely upon *United States v. Tomlinson*, 20 M.J. 897 (1985), a decision of the United States Court of Military Review. Tomlinson was convicted by a general court-martial of rape. The military judge admitted, over the objection of the defendant, rebuttal testimony by a clinical social worker that the victim had come to him with "complaints . . . following a sexual assault, described the victim's symptoms and opined that the victim's symptoms were consistent with rape trauma syndrome." *Id.* at 899.

The Court of Military Review found the testimony relevant because it "tends to indicate that [the victim] did not consent to intercourse with the appellant." *Id.* at 900. The court, however, found the testimony to be "unfairly prejudicial" under Rule 403 because "testimony that [the victim] suffered from rape trauma syndrome created a substantial risk that the court members would be overawed by [the] testimony and abdicate their responsibility for determining the credibility of [the victim's] testimony." *Id.* at 901-02.

The *Tomlinson* case appears to have little precedential weight, however. Not only is it contrary to the weight of authority, a separate panel of the same court came to a different conclusion just one year later in *United States v. Carter*, 22 M.J. 771 (1986).[3] The *Carter* court extensively

---

[3] *See also United States v. Bostick*, 33 M.J. 849, 853 (1991) ("we conclude that an expert in sexual assault counseling on post-traumatic stress disorders may testify as to the psychological or emotional trauma that an alleged sexual assault victim exhibits, and as to whether the victim's behavior is consistent or inconsistent with the behavior expected of a sexual assault victim.")

5

reviewed state criminal decisions and prior decisions of the military courts and concluded that "the issue of admissibility of rape trauma syndrome evidence is unsettled." *Id.* at 775. Notwithstanding the "unsettled nature of this issue," however, the court found the testimony admissible. The court concluded that the evidence was "unquestionable[y]" relevant on the issue of consent and that the testimony "has a high level of probative value in rape trials in which the defense is consent, [therefore] only compelling reasons should justify its exclusion." Id. at 776, quoting Comment, *Expert Testimony on Rape Trauma Syndrome: Admissibility and Effective Use in Criminal Rape Prosecutions*, 33 Am. U.L. Rev. 417, 453 (1984).

This Court finds, therefore, that the testimony of Dr. Zook-Bell is relevant on the issue of JL's consent (or lack of consent) and its probative value is not "substantially outweighed by the danger of the unfair prejudice, confusion of the issues, or misleading the jury . . . Fed. R. Evid. 403. The Court will instruct the jury, however, on the proper use of the testimony.

Based on the clear weight of authority, Dr. Zook-Bell's testimony is admissible and the defendant's motion to exclude it will be denied. Dr. Zook-Bell may testify concerning her clinical interview and testing of JL, her diagnosis of PTSD, the characteristics and behavior of sexual abuse victims generally[4], and may offer her opinion that JL's PTSD is consistent with that to be expected following a trauma such as sexual assault. Dr. Zook-Bell may also give limited testimony concerning the statements JL made to her and upon which she relies for her opinions and diagnosis. Although JL's statements concerning her subjective complaints are likely admissible under the hearsay exception of Fed. R.of Evid. 803(4) as statements made for the purpose of medical

---

[4] The government will, of course, be required to lay an appropriate foundation for such testimony which establishes the basis of Dr. Zook-Bell's knowledge.

6

diagnosis, see *United States v. Kappell*, 418 F.3d 550, 556-57 (6th Cir. 2005), the government has agreed to limit its questioning of Dr. Zook-Bell concerning JL's subjective complaints. The government has little need to question Dr. Zook-Bell as to these subjective complaints in any event since JL will testify at trial and the defendant may test her credibility as to her subjective complaints through vigorous cross examination. Dr. Zook-Bell will not, however, be permitted to state opinions about the credibility of JL.

That leads the Court to the defendant's request to conduct his own independent psychological evaluation of JL by a defense expert, citing constitutional due process grounds. As an initial matter, the procedural posture of defendant's request is quite unusual. On December 12, 2008, the defendant filed his "second motion" for extension of the motion deadline and a continuance of the final pretrial conference and the trial.[5] In support of his motion, the defendant asserted that he had just received the expert report of Dr. Zook-Bell, needed time to "consult with independent expert relative to the findings and to advise counsel as to the best course of action to take," and the need to "file motions relative to the psychological report." [Doc. 20]. The motion was opposed by the government and the Magistrate Judge held a hearing on December 15. The Magistrate Judge appears to have *sua sponte* decided the issue of an evaluation of JL by a defense expert at the hearing.[6] The Magistrate Judge subsequently denied the motion for a continuance because the only

---

[5] Magistrate Judge Inman had previously granted a similar motion to continue these deadlines and the originally scheduled trial date.

[6] The defendant did not request, in his motion for a continuance, an independent psychological examination of JL. In its response to that motion, however, the government "anticipated" such a defense request and argued that "the law is clear that a criminal defendant has no right, either under the Due Process Clause or Rule 16, to compel the psychiatric examination of a sexual assault victim," citing *United States v. Wallace*, 976 F.2d 743 (Table) 1992 WL 233908, *6 (6th Cir. June 19, 1992). It thus appears that the Magistrate Judge was reacting to the government's assertion.

7

basis for the motion was the government's disclosure of Dr. Zook-Bell's report, holding that "[t]he court determines that the defendant should not be afforded the right to compel a psychological examination of JL in this case, and for that reason defendant's motion to continue the trial and all antecedent dates is DENIED." [Doc. 25, p.3].

Defendant then styled his appeal of the Magistrate Judge's order as an "Appeal of Denial of Defense Request for an Independent Psychological Evaluation of JL." This Court subsequently granted a continuance of the trial date, rendering any appeal of the Magistrate Judge's order denying a continuance moot. A review of the written motion filed by the defendant, [Doc. 20], and the transcript of the hearing before the Magistrate Judge, reveals that defendant has never formally moved, either orally or in writing, for an independent psychological examination of JL. Although defendant has not properly requested an examination, the Court will nevertheless proceed as if defendant had done so.

The defendant cites no authority to support his assertion that "confrontation and fair trial provisions of the Sixth Amendment and the due process clause of the Fifth Amendment" entitle him to an order requiring a witness to submit to a psychological examination by a defense expert and this Court can locate no such authority. A defendant's right to due process and to call witnesses on his behalf is a fundamental constitutional right. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). That right is not absolute, however, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982) (holding, in the context of a child sex abuse case, that the defendant's right to call his own witnesses "must accommodate the state's 'compelling' interest in the 'protection of minor victims of sex crimes from further trauma and embarrassment'"), and may be subject to restrictions provided that the restrictions are not "arbitrary or disproportionate to the purposes they are designed to serve".

*Rock v. Arkansas*, 483 U.S. 44, 55-56 (1987).

At least one panel of the Sixth Circuit has said that the court "cannot order a non-party witness to be examined by a psychiatrist," *United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir. 1989), while a later panel has stated that "the Sixth Circuit has not previously ruled on the due process implications, if any, of the denial of a defendant's request for independent medical or psychological examination of his accusers." *Giles v. Schotten*, 449 F.3d 698 (6th Cir. 2006). While the court may condition a witness's testimony on a prior examination, that power should be "exercised sparingly." *Ramirez*, 871 F.2d at 584-85, citing *United States v. Gutman*, 725 F.2d 417, 420 (7th Cir. 1984), *cert. denied*, 489 U.S. 880 (1984).

Both the government and the defendant discuss the Sixth Circuit opinion in *United States v. Wallace*, 1992 WL 233908 (6th Cir. 1992) (unpublished), and appear to agree that the district court "has broad discretion to compel a witness to undergo a psychiatric examination." [Doc. 34, p.3] Acknowledging that "there is no constitutional right to discovery in a criminal case," the *Wallace* court found no abuse of discretion in the district court's refusal to require the victim to undergo an examination by a defense psychologist. *Id.* at **5-6. Other circuits have held similarly. *See United States v. Lee Wan Nam*, 274 F.2d 863, 865 (2d Cir. 1960), *cert. denied*, 363 U.S. 803 (1960) ("ordering a witness to undergo a psychological examination is a drastic measure" and a matter "particularly within the discretion of the trial court"); *United States v. Rouse*, 111 F.3d 561, 567 (8th Cir. 1997); *United States v. Skorniak*, 59 F.3d 750, 755 (8th Cir. 1995); *United States v. Pino*, 827 F.2d 1429 (10th Cir. 1987); *Colley v. Sumner*, 784 F.2d 984 (9th Cir.1986). *cert. denied* 479 U.S. 839 (1986); *United States v. Brown*, 770 F.2d 768 (9th Cir. 1985), *cert. denied*, 474 U.S. 1036 (1985); *United States v. Provenzano*, 688 F.2d 194, 203 (3d Cir.1982), *cert. denied*, 459 U.S. 1071 (1982);

9

*United States v. Jackson*, 576 F.2d 46, 48 (5th Cir. 1978); *United States v. LaBarbera*, 463 F.2d 988, 990 (7th Cir. 1972); *United States v. Benn*, 476 F.2d 1127 (D.C. Cir. 1972); *United States v. Russo*, 442 F.2d 498, 503 (2d Cir. 1971), *cert. denied*, 404 U.S. 1023, *reh'g denied*, 405 U.S. 949 (1972). No court, as far as this Court can tell, has held the refusal to order a witness to undergo a psychiatric examination a violation of the defendant's constitutional rights.

In exercising this discretion, the Court must consider the infringement on a witness's privacy, the opportunity for harassment, and the possibility that an examination will hamper law enforcement by deterring witnesses from coming forward. *United States v. Raineri*, 670 F.2d 702, 709 (7th Cir. 1982). *See also United States v. Long*, 1:08-CR-23, 2008 WL 4695043 (E.D. Tenn. 2008). The defendant's need for the examination also appears to be an important factor. *Giles*, 449 F.3d at 705, citing *Rouse*, 111 F.3d at 566-67.

Challenged at this Court's hearing on defendant's appeal on January 14, 2009, to articulate a "compelling need" on the part of defendant sufficient to warrant the drastic measure of ordering JL to undergo an examination by a defense expert, counsel for defendant was unable to do so, except to argue the "unfairness" of the situation. The only reason put forth in defendant's written pleadings is to allow "the defense to test the government's proof and properly confront and cross-examine the witnesses against the accused . . ." [Doc. 34, p.3]. After due consideration of defendant's request, this Court concludes, for several reasons, that defendant is not entitled to an order requiring JL to submit to the requested examination or conditioning her testimony or that of Dr. Zook-Bell on the examination.

First of all, JL volunteered (or at the very least acquiesced in the government's request) for the examination by Dr. Zook-Bell. Secondly, the defendant's need for the examination is actually

10

quite uncompelling. The defendant is free to engage the services of his own expert, both to advise the defendant's attorneys on cross-examination of Dr. Zook-Bell and to give testimony in rebuttal to that of Dr. Zook-Bell, and has apparently already done so. The defendant's expert will have access to all the objective testing data from Dr. Zook-Bell's testing as well as any other documents relied upon by Dr. Zook-Bell. [See Doc. 43]. The defendant's psychological expert may testify as to the same matters about which Dr. Zook-Bell will be allowed to testify and to criticize Dr. Zook-Bell's methodology, her diagnosis and her other conclusions. Furthermore, the Court will permit the defendant's expert witness to remain in the courtroom during the trial testimony of both JL and Dr. Zook-Bell. The Court will also instruct the jury that it can credit or discredit expert testimony as it can the testimony of any other witness. Lastly, the Court will also prohibit the government from attempting to impeach the defendant's expert on the basis that she has not personally examined or interviewed JL. Under these circumstances, it not an abuse of the Court's discretion to deny the defendant's request for an examination and, quite likely, would be a clear abuse of discretion to do otherwise.

**III.    Conclusion**

For the reasons set forth herein, the defendant's "Appeal Of Denial Of Defense Request For An Independent Psychological Evaluation Of JL," [Doc. 34], is OVERRULED and the order of the Magistrate Judge, [Doc. 25], is AFFIRMED AND ADOPTED. The defendant's "Motion To Exclude Testimony Of Dr. Catherine Zook-Bell, [Doc. 66], is DENIED.

So Ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE