UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:08-CR-90 |
| | ) | |
| DEXTER L. MORRIS, JR. | ) | |

**MEMORANDUM OPINION AND O R D E R**

On February 10, 2009, the government filed its "Second Notice" of evidence of other crimes, wrongs, or acts it intends to introduce at trial pursuant to Fed. R. Evid.404(b). [Doc. 80]. Before the Court is the defendant's "Motion In Limine" to exclude the proffered evidence. [Doc. 112]. For the reasons which follow, the motion of the defendant will be DENIED.

**I.     Background**

Defendant Morris is charged in a three-count indictment with depriving persons of their civil rights under color of law in violation of 18 U.S.C. § 242 and making false statements in violation of 18 U.S.C. § 1001. In the two counts alleging violation of 18 U.S.C. § 242, the defendant is accused of acts alleged to have occurred on August 24, 2005 and in September, 2005. Specifically, it is alleged that the defendant, while employed as a deputy sheriff, stopped a vehicle driven by a woman identified

as JL and subsequently forced JL to engage in sexual activity in the rear seat of his patrol car. He is also charged with causing another woman, NE, to engage in an indecent act at the Hamblen County Detention Center as a condition of not pursuing a criminal charge against NE. NE had been transported to the detention center by Morris after Morris had made a traffic stop.

**II.     Rule 404(b)**

Federal Rule of Evidence 404(b) permits evidence of "other crimes, wrongs, or acts," not for the purpose of proving character or propensity, but "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The list of legitimate purposes is not exhaustive, and one proper purpose not included in the list of examples is to show evidence of "a common scheme or plan embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other." *United States v. Joseph*, 270 F. App'x. 399 (6th Cir. 2008) (quoting *United States v. Burkley*, 591 F.2d 903, 920 (D.C. 1978)).

The process for admitting evidence pursuant to Rule 404(b) was explained in *United States v. Merriweather*, where the Sixth Circuit stated:

> Upon objection by the defendant, the proponent of the evidence, usually the government, should be required to identify the *specific* purpose or purposes for which the government offers the evidence of "other crimes, wrongs,

2

> or acts." By so requiring, we do not mandate hypertechnicality. It is true that whether 404(b) evidence is admissible for a particular purpose will sometimes be unclear until late in the trial because whether a fact is "in issue" often depends on the defendant's theory and the proofs as they develop. Nevertheless, the government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove.
>
> After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose, whether to prove *motive* or *intent* or *identity* [or] some other purpose, is "material"; that is, whether it is "in issue" in the case. If the court finds it is, the court must *then* determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must clearly, simply, and correctly instruct the jury as to the *specific* purpose for which they may consider the evidence.

78 F.3d 1070, 1076-77 (6th Cir. 1996)(internal quotation marks omitted). *Merriweather* does not impose "strict, inflexible temporal or sequential mandates upon the district courts." *United States v. Miller*, 115 F.3d 361, 366 (6th Cir. 1997).

## III.  Analysis

In this case, the government has given notice that it intends to introduce evidence at trial that defendant

> engaged in a traffic stop of a sixteen year old girl at

3

>approximately 9:30 p.m. on September 24, 2005. Defendant had earlier observed the teenage girl at a local convenience market where she was purchasing gasoline for her car. Defendant then followed the girl out of store parking lot and stopped her car after purportedly observing her car cross the fog line on the road. During the stop, the defendant sought consent to search the girl's vehicle when he had no probable cause or reasonable suspicion that she had engaged in any criminal activity or that contraband was to be found within the car. The defendant further directed the girl to pull her shirt up and shake her brassiere. During the stop, defendant engaged in what the girl interpreted as sexually suggestive remarks and defendant suggested the girl meet him at a park down the road if she wanted to continue "talking." Instead, the girl left and reported the stop to the Morristown Police Department.

[Doc. 80 at 2].

The defendant has objected to the admission of the evidence related to the circumstances of the September 24, 2005 traffic stop. The government identifies "scheme and plan to use his position as a deputy sheriff to stop women for the purpose of engaging or attempting to engage in sexual conduct" as a proper purpose for the admission of the evidence under Rule 404(b). The defendant, on the other hand, argues that the evidence does not establish a common scheme or plan.

Before evidence is admissible as showing a common scheme or plan, "[s]omething more than repeated performance of the same class of crimes is required in evidencing a 'design' or 'plan' which, if proved, may raise the inference that the accused was the perpetrator of the crime in question." *United States v. Phillips*, 599

4

F.2d 134, 136 (6th Cir. 1979). Rather, "there must either be an agreement to commit a series of crimes, [i.e.,] a 'plan,' or there must be a distinctive pattern [i.e.,] '[t]he device used must be so unusual and distinctive as to be like a signature.'" *Id.* (citing *McCormick*, evidence § 157 at 328 (1954)). Such "*modus operandi*" evidence is used under 404(b) to show identity of the perpetrator of the crime at issue, and is almost universally admitted when the issue is one related solely to identity. *United States v. Davis*, 547 F.3d 520, 530 (6th Cir. 2008) (citing *United States v. Perry*, 438 F.3d 642, 648 (6th Cir.), *cert. denied*, 547 U.S. 1139, 126 S. Ct. 2045, 164 L. Ed.2d 799 (2006)). Although *modus operandi* evidence is generally offered to prove identity, it has also been admitted under the "plan" exception to Rule 404(b). *See United States v. Connelly*, 874 F.2d 412, 417 (7th Cir. 1989) (citing *J. Weinstein & M. Berger*, 2 *Weinstein's Evidence* ¶ 404[15] p. 404-112 and ¶ 404[16] p. 404-127 (1988)). *See also United States v. Johnson*, 970 F.2d 907 (D.C. Cir. 1992).

As noted in *Joseph*, "surrounding circumstances must support an inference that the crimes were related in the defendant's mind," and both the other acts and the charged crime "must be part of a common or continuing scheme." *Joseph*, 270 F. App'x. at 404 (quoting 1 *Christopher B. Mueller & Laird C. Kirkpatrick*, Federal Evidence (3rd ed.) § 4:35 (citations omitted). The similarities must be distinctive and "not necessarily typical" of the type of crime involved. *Id.* at 406 (quoting *United*

5

*States v. Mack*, 258 F.3d 548, 554 (6th Cir. 2001)) ("standard conduct, although not particularly unusual by itself, may, in combination, present an unusual and distinctive pattern constituting a 'signature'").

The determination of whether or not there is sufficient distinctive similarity between the September 24, 2005 incident and the offenses charged in Counts One and Two of the indictment requires a detailed look at the factual allegations related to these incidents. With respect to the alleged sexual assault of JL on October 24, 2005, the criminal complaint originally filed in this case alleges that the victim, JL, noticed a police cruiser with black and white markings pull onto the highway in front of her but, after a short while, noticed that the cruiser had "somehow gotten behind her." The cruiser followed JL for what seemed to be an unusually long time and then activated his emergency lights. The officer approached JL's vehicle and asked for driver's license, registration and proof of insurance. The officer eventually directed JL to get out of the vehicle and moved her to the rear of the vehicle where she was out of the sight of a passenger in the vehicle. After some questioning of JL by Morris, JL was directed "to pull her bra away from her body and shake her chest, purportedly as a part of a search for contraband. JL was required to do this several times . . . . Morris returned to the rear of the truck where he again directed JL to pull her bra away from her body and shake her chest." Count Two of the indictment deals with an early

6

morning traffic stop of NE by Morris. While alone with NE, Morris began "searching" her. "Morris had NE pull her bra away from her body purportedly to expose hidden items; Morris also had NE turn around several times and he patted her down with extraordinary attention to her buttocks."

With respect to the September 24, 2005 incident, it is reported in detail in a statement made by the victim to the Morristown Police Department. According to that statement, the sixteen year old victim had stopped at a convenience store during the evening of September 24, 2005[1] and a police officer, later identified as Morris, was in the store. The officer pulled from the convenience store parking lot onto the highway behind the victim, followed her for some distance and then activated his emergency lights. The officer asked for identification, proof of insurance and registration. The officer told the victim to "step out of the car", asked if there was anything in the car "he should know about" and, after looking through the car and into the victim's pocketbook and finding a picture of the victim's boyfriend, began to ask personal questions. After having already done so once, the officer required the victim to "pull out my pockets" and he "felt in that little pocket again." He then "flashed the flashlight at my butt and felt in my back pockets. He then told me to pull my shirt up

---

[1] The government's 404(b) notice references a September 24 event. The statement made by the victim to the Morristown Police Department appears to have been taken at 2:00 a.m. on September 26, suggesting that the event actually occurred on September 25. It is clear, however, that the government notice and the police report refer to the same incident.

7

and shake my bra. I told him I was fat [sic] he turned his flashlight back on and looked and said no your [sic] not. He said well I ain't gonna wright [sic] you a ticket, but if you [sic] enjoying talking to me you can pull over there at the park." The three events described, all happening within about thirty days of each other, are probative of a scheme and plan on the part of the defendant to use his position as a deputy sheriff to effect traffic stops and locate vulnerable female victims for the purpose of engaging or attempting to engage in sexual conduct. The similarities are striking. In each case, Morris stopped a female driver by activating his emergency lights on his sheriff's department cruiser, directing each to exit her vehicle. He then conducted an inappropriate "search," purportedly in a search for contraband, by requiring the victim to pull her bra away from her body and "shake her chest." These actions are distinctive and cannot be said to be characteristic of a typical sexual assault by a police officer. Morris' suggestive comments and "unorthodox" methods of "searching" his victims suggest that his purpose was to identify victims or potential victims. The evidence, therefore, is admissible for a proper purpose under Rule 404(b) and is relevant on the issue of Morris' scheme or plan. The evidence could also be relevant on the issue of identity, depending upon the defendant's theory of defense.

That determination, however, is not the end of the Court's inquiry. Even

though the evidence is offered for a proper purpose, the Court must determine, before admitting the evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. The defendant does not address this issue, arguing only that the evidence is not sufficient to establish a common scheme or plan. A Rule 403 violation resulting in unfair prejudice to a defendant does not occur when a defendant's case is damaged "from the legitimate probative force of the evidence;" rather, it occurs only when prejudicial evidence "tends to suggest a decision on an improper basis." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988). The prejudice to be weighed is the ***unfair*** prejudice. Evidence that is prejudicial only in that it paints a defendant in a bad light, but does not confuse or mislead the jury, is not unfairly prejudicial. *United States v. Logan*, 250 F.3d 350, 368-69 (6th Cir.), *cert. denied*, 534 U.S. 895 (2001).

In this particular case, the probative value of the evidence is significant and the potential unfair prejudicial effect of the evidence is slight. To the extent there is prejudice to the defendant, that prejudice can be cured by the Court clearly, simply, and correctly instructing the jury as to the specific purpose for which they may consider the evidence, a limiting instruction the Court will give to the jury, both at the time the testimony is offered and in its final instructions.

Lastly, this Court must also make a preliminary finding that the evidence of the

9

Case 2:08-cr-00090-JRG   Document 168   Filed 05/29/09   Page 9 of 10   PageID #: 515

September 24, 2005 incident is sufficient to allow the jury to conclude that the incident occurred. The Court will, therefore, hear the victim of the September 24, 2005 traffic stop out of the presence of the jury to make that determination before her testimony will be admitted.

## IV. Conclusion

For the foregoing reasons, the defendant's motion in limine, [Doc. 112], is **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE